LINDA FAULKNER BUCK, BY HER NEXT FRIEND, ELMER L. FAULKNER v. UNITED STATES FIDELITY & GUARANTY COMPANY.

(Filed 22 September, 1965.)

**1. Insurance § 47.1—**

"Uninsured vehicle" as used in an uninsured motorist endorsement in a policy of automobile insurance must be construed in accordance with the language and interpreted in the light of the purport and intent of the endorsement and the pertinent statutes to protect the insured and any operator of insured's car with insured's consent against injury caused by the negligence of uninsured or unknown motorists, and such coverage is not affected by the language or statutory compliance of a liability policy, if any, on the other vehicle involved in the collision.

**2. Statutes § 5—**

A statute must be construed to ascertain and put into effect the legislative intent.

**3. Insurance § 3—**

An insurance contract must be liberally construed in accordance with its purport and intent.

**4. Insurance § 47.1—**

An automobile upon which a liability policy has been issued is nevertheless an uninsured vehicle within the intent and purview of the statutes and an uninsured motorist endorsement if the policy on such automobile does not cover the liability of a person using the vehicle and inflicting injury on the occasion of the collision in question. G.S. 20-279.21(b) (3).

**5. Same—**

Plaintiff was injured while driving, with permission of the owner, a vehicle covered by a policy of insurance having an uninsured motorist endorsement. Judgment was obtained against the driver of the other car involved in the collision but no judgment was obtained against the owner of the other car because of the adjudication that the driver was operating the vehicle without the knowledge or consent of the owner, and execution on the judgment was returned unsatisfied. *Held:* Plaintiff was within the

coverage of the uninsured motorist endorsement on the policy on the car driven by her.

APPEAL by plaintiff from *Bone, E. J.,* May 24, 1965 Civil Session of PITT.

Plaintiff, Linda Faulkner Buck, a minor, by Elmer L. Faulkner, her father and next friend, instituted this action November 12, 1964, to recover $5,000.00 from defendant, United States Fidelity & Guaranty Company, under the uninsured motorist endorsement attached to and constituting an integral part of an automobile liability policy issued by defendant to Elmer L. Faulkner and providing coverage with reference to the operation of his 1953 Mercury.

The pleadings and stipulations establish the facts narrated below.

On November 30, 1963, plaintiff was operating her father's said Mercury, with his permission, along U. S. Highway #117. A Chevrolet truck owned by Stackhouse, Inc. (Stackhouse) and operated by Roy Lewis Cowles (Cowles) crashed into the rear of said Mercury, causing plaintiff to sustain severe and permanent personal injuries.

On February 6, 1964, plaintiff, by her father and next friend, instituted an action in the Superior Court of Pitt County to recover damages in the amount of $15,000.00, alleging the injuries plaintiff sustained as a result of said collision were caused by the negligent operation of said truck by Cowles as agent for Stackhouse. Cowles did not answer. Stackhouse, answering, denied, *inter alia,* the alleged agency.

At September 28, 1964 Session of Pitt Superior Court, upon trial of said prior action, plaintiff recovered a verdict and judgment for $9,-000.00 against Cowles, but recovered nothing from Stackhouse, the jury having determined that Cowles was not operating the truck as agent of Stackhouse. Execution issued October 13, 1964, on the judgment against Cowles proved "of no avail" and said judgment remains unsatisfied.

The policy issued by defendant, United States Fidelity & Guaranty Company, to plaintiff's father was in full force and effect at the time of said collision of November 30, 1963.

Pertinent provisions of the endorsement on which this action is based, appearing under the caption or title, "PROTECTION AGAINST UNINSURED MOTORISTS INSURANCE," are quoted below.

"In consideration of the payment of the premium *for this endorsement,* the Company agrees with the Named Insured, subject to the limits of liability, exclusions, conditions and other terms of this endorsement and to the applicable terms of the policy:

INSURING AGREEMENTS

"I.   DAMAGES FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED BY UNINSURED AUTOMOBILES.

"To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of:

"(a) bodily injury, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury,' sustained by the Insured;

"(b) (Relates to property damage and is not applicable.) caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile.

                    *     *     *     *     *     *

"II.   DEFINITIONS.

                    *     *     *     *     *     *

"(c) UNINSURED AUTOMOBILE. The term 'uninsured automobile' means:

> (1) with respect to damages for bodily injury and property damage an automobile with respect to the ownership, maintenance or use of which there is, in the amounts specified in the North Carolina Motor Vehicle Safety and Financial Responsibility Act, neither (i) cash or securities on file with the North Carolina Commissioner of Motor Vehicles nor (ii) a bodily injury and property damage liability bond or insurance policy, *applicable to the accident with respect to any person or organization legally responsible for the use of such automobile;* or * * *." (Our italics.)

It was stipulated that the Stackhouse truck, operated by Cowles on the occasion of the collision, "was covered by a standard automobile liability insurance policy issued to Stackhouse, Inc., which was in full force and effect and covered all of the risks which were required by law to be covered, but said policy did not cover injuries inflicted by the negligence of one who was driving said motor vehicle without the permission of the owner."

The parties waived trial by jury and agreed that the court might find from the evidence any essential facts not established by the pleadings or stipulations and decide the case by answering the following issue, to wit:

"Was Roy Lewis Cowles, at the time of the collision referred to in paragraph fifth of the complaint, operating an 'uninsured vehicle' within

the definition and meaning of said term as contained in North Carolina General Statute, Chapter 20, Section 279.21, Subsection b(3) and Policy # AF 5766338 issued by United States Fidelity & Guaranty Company, defendant, to Elmer Lloyd Faulkner, as named insured?"

After hearing evidence offered by both sides with relation thereto, Judge Bone found as a fact that Cowles, at the time of the collision, was operating the Stackhouse truck "without the permission, knowledge or consent of Stackhouse, Inc., or any of its officers, agents, or employees."

It was stipulated, if the issue submitted by agreement should be answered, "Yes," plaintiff was entitled to recover of defendant the full sum of $5,000.00, together with the costs of this action; but, if said issue should be answered, "No," plaintiff was not entitled to recover any amount from defendant.

Upon the facts admitted and found, Judge Bone, being "of the opinion that the motor vehicle driven by Roy Lewis Cowles at the time of plaintiff's injury was not an 'uninsured vehicle' within the meaning of the issue set forth above," answered said issue, "No," and entered judgment for defendant. Plaintiff excepted and appealed.

*Gaylord & Singleton for plaintiff appellant.*
*M. E. Cavendish for defendant appellee.*

BOBBITT, J. Uninsured motorists coverage "is designed to further close the gaps inherent in motor vehicle financial responsibility and compulsory insurance legislation." 7 Am. Jur. 2d, Automobile Insurance § 135, p. 460. It "is intended, within fixed limits, to provide financial recompense to innocent persons who receive injuries, and the dependents of those who are killed, through the wrongful conduct of motorists who, because they are uninsured and not financially responsible, cannot be made to respond in damages." Annotation: 79 A.L.R. 2d 1252, 1252-53.

G.S. 20-279.21(b)(3), in pertinent part, provides: "No policy of bodily injury liability insurance, covering liability arising out of the ownership, maintenance, or use of any motor vehicle, shall be delivered or issued for delivery in this State with respect to any motor vehicle registered or principally garaged in this State unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in subsection (c) of § 20-279.5, under provisions filed with and approved by the Insurance Commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-

run motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom."

G.S. 20-279.21(b)(3) was enacted as Chapter 640, Session Laws of 1961, entitled "An Act to amend G.S. 20-279.21 defining motor vehicle liability insurance policy for financial responsibility purposes so as to include protection against *uninsured motorists.*" (Our italics.)

The quoted statutory provision uses but does not define the term "uninsured motor vehicles." The term "uninsured automobile" is defined in the uninsured motorist endorsement attached to and an integral part of the automobile liability policy issued by defendant to plaintiff's father. The wording of the issue submitted by the parties as determinative implies agreement that the meaning of the term "uninsured motor vehicle" as used in the quoted statutory provision and of the term "uninsured automobile" as used in said policy endorsement is the same.

While the liability of Stackhouse, if any, was insured by a "standard automobile liability insurance policy" issued to it, Stackhouse incurred no liability in connection with the operation of its truck on the occasion when plaintiff was injured. Since the truck was operated by Cowles "without the permission, knowledge or consent" of Stackhouse, the Stackhouse policy was not "applicable to the accident with respect to any person or organization legally responsible for the use" of the truck. Under the admitted and established facts, on the occasion of the collision Cowles was the only person legally responsible for the use of the Stackhouse truck. It is not contended that any automobile liability insurance policy applicable to the accident in which plaintiff was injured provides coverage for the liability of Cowles in connection therewith.

Admittedly, the automobile liability insurance policy issued to Stackhouse with reference to its truck complied with the requirements of G.S. 20-279.21 (a) and (b). However, the present action is on the contract between plaintiff's father and defendant, namely, the uninsured motorists endorsement, and decision herein depends upon the provisions of *that* contract and not upon those of the policy issued to Stackhouse.

Defendant contends the Stackhouse truck was in fact an insured vehicle. If the term "insured vehicle" were given a literal interpretation, fire, theft or collision insurance thereon would negate the status of the truck as an uninsured vehicle. Obviously, the term "uninsured vehicle," when used in an uninsured motorists endorsement, must be interpreted in the light of the fact that such endorsement is designed to protect the insured, and any operator of the insured's car with the insured's

consent, against injury caused by the negligence of uninsured or unknown motorists.

Well-established legal principles include the following: (1) The "primary rule of construction of statutes is to ascertain and declare the intention of the legislature, and carry such intention into effect to the fullest degree." 50 Am. Jur., Statutes § 223. (2) "An insurance contract or policy should be liberally construed to accomplish the purpose or object for which it is made." 44 C.J.S., Insurance § 297(a).

In our view, both the intent of the legislation and the wording of the endorsement impel the conclusion that an automobile on which an automobile liability insurance policy has been issued is uninsured within the meaning of said endorsement unless such policy covers the liability of the person using it and inflicting injury on the occasion of the collision or mishap.

The question presented and decided is one of first impression in this jurisdiction. Indeed, Application of Travelers Indemnity Company, 235 N.Y.S. 2d 718, *affirmed,* without written opinion, 246 N.Y.S. 2d 1015, is the only case disclosed by our research involving a closely analogous factual situation. There, although other questions are discussed at greater length, the holding is in accord with the decision reached herein.

In *Hardin v. Insurance Co.,* 261 N.C. 67, 134 S.E. 2d 142, where the hearing was on demurrer to defendant's plea in bar, this Court considered identical provisions of an uninsured motorist endorsement in relation to a wholly different factual situation. There, the demurrer admitted the car was an "insured automobile." Moreover, the automobile liability insurance policy covering the car was applicable to the collision in which the plaintiff was injured and covered the liability of the operator thereof. This Court decided the car *did not become* an "uninsured automobile" by reason of the subsequent receivership and insolvency of the liability insurer. It is noted that G.S. 20-279.21(b)(3) was amended by Chapter 156, Session Laws of 1965, so as to preclude the result reached by this Court in *Hardin v. Insurance Co., supra.*

The conclusion reached is that the issue submitted by the parties as determinative should have been answered, "Yes," and that the court erred in answering it, "No." For the error indicated, the judgment of the court below is vacated. The cause is remanded with direction that said issue be answered, "Yes," and that judgment be entered in favor of plaintiff for $5,000.00, together with the costs of this action, in accordance with the stipulation.

Error and remanded.