DIETZ, Judge.
 

 *527
 
 Defendant Flora Riano Gonzalez appeals her conviction for felony child abuse, arguing that the trial court committed plain error by improperly instructing the jury on the definition of the term "sexual act." This argument is squarely precluded by our decision in
 
 State v. McClamb
 
 ,
 
 234 N.C. App. 753
 
 ,
 
 760 S.E.2d 337
 
 (2014). But our review of this case became more difficult when, several months ago, this Court issued its opinion in
 
 State v. Alonzo
 
 , --- N.C. App. ----, ----,
 
 819 S.E.2d 584
 
 , 587 (2018).
 

 Alonzo
 
 effectively overruled
 
 McClamb
 
 after concluding that
 
 McClamb
 
 had effectively overruled another, earlier decision. We ordered supplemental briefing from the parties to address
 
 Alonzo
 
 and, specifically, to address the growing trend among panels of our Court to overrule or refuse to follow precedent based on principles arising from our
 
 *528
 
 Supreme Court's decision in
 
 In re Civil Penalty
 
 ,
 
 324 N.C. 373
 
 ,
 
 379 S.E.2d 30
 
 (1989).
 

 As explained below,
 
 In re Civil Penalty
 
 does not permit panels of this Court to disregard existing precedent because the panel believes that precedent improperly narrowed or distinguished other, earlier precedent. Thus, because the Supreme Court stayed the mandate in
 
 Alonzo
 
 -meaning it does not yet have any precedential effect-and because
 
 McClamb
 
 is controlling precedent that this Court must follow, we reject Gonzalez's arguments and find no error in the trial court's judgments.
 

 Facts and Procedural History
 

 Beginning in 2012, Flora Riano Gonzalez arranged for her twelve-year-old daughter to work as a prostitute, meeting men and having sexual intercourse in exchange for money. This continued for several years. Many men who had sex with Gonzalez's daughter used a condom but some did not. Gonzalez's daughter later became pregnant. Gonzalez
 
 *887
 
 reported her daughter's pregnancy to the police and claimed that she had been abducted and raped by four men. Law enforcement took Gonzalez's daughter to a health clinic where she was treated for chlamydia and underwent an abortion.
 

 Gonzalez's daughter later began a steady relationship with a man when she was around sixteen years old. She became pregnant with her boyfriend's child. At that point, Gonzalez's daughter became concerned that Gonzalez would begin prostituting another of her children, who was now twelve years old. Gonzalez's daughter confided in a friend, who helped her meet with law enforcement to tell her story. The State arrested Gonzalez and charged her with felony child abuse by prostitution, felony child abuse by sexual act, human trafficking, and sexual servitude of a child. The case went to trial.
 

 The jury acquitted Gonzalez of human trafficking, but found her guilty of both counts of felony child abuse and of sexual servitude of a child. The trial court sentenced her to consecutive terms of 25 to 39 months in prison for each of the child abuse convictions, and to another consecutive term of 92 to 120 months in prison for the sexual servitude conviction. Gonzalez timely appealed.
 

 Analysis
 

 Gonzalez argues that the trial court committed plain error when it instructed the jury that the phrase "sexual act" in the felony child abuse statute meant "an inducement by the defendant of an immoral or indecent touching by the child for the purpose of arousing or gratifying
 
 *529
 
 sexual desire." Gonzalez contends that the court should have used a much narrower definition of "sexual act" that does not include vaginal intercourse. Gonzalez did not object to the court's instruction at trial and concedes that we review this issue for plain error.
 

 The statute under which Gonzalez was charged,
 
 N.C. Gen. Stat. § 14-318.4
 
 (a2), is found in a portion of the criminal code addressing "Protection of Minors." The statute, titled "Child abuse a felony" provides as follows: "Any parent or legal guardian of a child less than 16 years of age who commits or allows the commission of any sexual act upon the child is guilty of a Class D felony."
 
 N.C. Gen. Stat. § 14-318.4
 
 (a2). Importantly, the statute does not define the term "sexual act" and that phrase is not defined anywhere else in the subchapter.
 

 In a separate subchapter of the General Statutes, in an article titled "Rape and Other Sex Offenses," there is a definition of the phrase "sexual act" that applies "[a]s used in this Article."
 
 N.C. Gen. Stat. § 14-27.20
 
 (4). That definition includes various forms of sexual activity but expressly excludes "vaginal intercourse":
 

 "Sexual act" means cunnilingus, fellatio, analingus, or anal intercourse, but does not include vaginal intercourse. Sexual act also means the penetration, however slight, by any object into the genital or anal opening of another person's body: provided, that it shall be an affirmative defense that the penetration was for accepted medical purposes.
 

 Id.
 

 The distinction between vaginal intercourse and other sexual acts exists in this section of our criminal statutes because the crime of rape, which involves vaginal intercourse, is treated differently from other sex offense crimes.
 
 Compare
 

 N.C. Gen. Stat. § 14-27.21
 
 (First-degree forcible rape)
 
 with
 

 N.C. Gen. Stat. § 14-27.26
 
 (First-degree forcible sex offense).
 

 In two earlier cases, this Court applied the definition of "sexual act" found in
 
 N.C. Gen. Stat. § 14-27.20
 
 (4) to the felony child abuse statute, without conducting an analysis of
 
 why
 
 that definition should apply.
 
 [1]
 
 First, in
 
 State v. Lark
 
 ,
 
 198 N.C. App. 82
 
 ,
 
 678 S.E.2d 693
 
 (2009), the Court addressed a case involving a defendant who engaged in fellatio and anal intercourse with his juvenile son. The defendant argued that the trial court included sexual acts in the jury instructions that were not
 
 *530
 
 supported by the evidence.
 
 Id.
 
 at 87,
 
 678 S.E.2d at 698
 
 . In its analysis, this Court cited the definition of "sexual act" in
 
 *888
 

 N.C. Gen. Stat. § 14-27.20
 
 (4) in its determination that both fellatio and anal intercourse were "sexual acts."
 

 Id.
 

 at 88
 
 ,
 
 678 S.E.2d at 698
 
 .
 

 Next, in
 
 State v. Stokes
 
 ,
 
 216 N.C. App. 529
 
 ,
 
 718 S.E.2d 174
 
 (2011), the Court addressed a case in which a defendant challenged the sufficiency of the evidence that he digitally penetrated his juvenile daughter's vagina. The Court again cited the definition of "sexual act" in
 
 N.C. Gen. Stat. § 14-27.20
 
 (4) to conclude that digital penetration of a vagina is a sexual act.
 
 Stokes
 
 ,
 
 216 N.C. App. at 532
 
 ,
 
 718 S.E.2d at 177-78
 
 .
 
 Stokes
 
 also involved allegations of vaginal intercourse but, in its analysis of the issue, the
 
 Stokes
 
 court discussed only the digital penetration.
 

 Id.
 

 Then, in
 
 State v. McClamb
 
 ,
 
 234 N.C. App. 753
 
 ,
 
 760 S.E.2d 337
 
 (2014), this Court squarely addressed the question of whether the phrase "sexual act" in the felony child abuse statute included vaginal intercourse. In a detailed analysis, the Court distinguished
 
 Stokes
 
 , explaining that "
 
 Stokes
 
 is controlling with respect to the meaning of the term 'sexual act' ... only in light of the narrow factual circumstances and legal issue raised therein."
 
 McClamb
 
 ,
 
 234 N.C. App. at 758
 
 ,
 
 760 S.E.2d at 341
 
 . The Court concluded that
 
 Stokes
 
 only addressed the issue of digital penetration and "did not hold" that the definition of sexual act in the felony child abuse statute "exclude[s] vaginal intercourse as a sexual act."
 

 Id.
 

 The Court also distinguished
 
 Lark
 
 in a footnote, explaining that it "is similarly limited to an analysis of fellatio as a sexual act."
 

 Id.
 

 at 758 n.2,
 
 760 S.E.2d at
 
 341 n.2.
 

 Finally, several months ago, this Court addressed this issue again in
 
 State v. Alonzo
 
 , --- N.C. App. ----, ----,
 
 819 S.E.2d 584
 
 , 587 (2018). In
 
 Alonzo
 
 , the Court held that "there is a conflict between our precedent" in
 
 McClamb
 
 ,
 
 Stokes
 
 , and
 
 Lark
 
 .
 

 Id.
 

 Applying principles that stem from our Supreme Court's decision in
 
 In re Civil Penalty
 
 ,
 
 324 N.C. 373
 
 , 384,
 
 379 S.E.2d 30
 
 , 37 (1989), a breakthrough case that governs this Court's review of its own precedent,
 
 Alonzo
 
 declined to follow
 
 McClamb
 
 , concluding "we are bound by our earlier decision in
 
 Lark
 
 ."
 
 Alonzo
 
 , --- N.C. App. at ----,
 
 819 S.E.2d at 587
 
 .
 

 Our Supreme Court later stayed this Court's mandate in
 
 Alonzo
 
 and thus
 
 Alonzo
 
 does not yet have any precedential effect.
 
 State v. Alonzo
 
 , --- N.C. ----,
 
 817 S.E.2d 733
 
 (2018). But Gonzalez urges us to adopt the same reasoning applied in
 
 Alonzo
 
 , and to hold that
 
 McClamb
 
 is not good law.
 

 As explained below, we decline to do so because
 
 In re Civil Penalty
 
 does not empower us to overrule precedent in this way. What
 
 *531
 
 occurred in
 
 Lark
 
 ,
 
 Stokes
 
 , and
 
 McClamb
 
 is the same sequence of events that gave us
 
 In re Civil Penalty
 
 . In 1968, the Supreme Court decided a case that limited the power of state agencies to impose civil penalties under Article IV, Section 3 of the North Carolina Constitution.
 
 State ex rel. Lanier v. Vines
 
 ,
 
 274 N.C. 486
 
 , 497,
 
 164 S.E.2d 161
 
 , 167-68 (1968). Later, this Court distinguished
 
 Lanier
 
 in a case upholding the power of a state agency to impose civil penalties under our Constitution.
 
 N.C. Private Protective Servs. Bd. v. Gray, Inc.
 
 ,
 
 87 N.C. App. 143
 
 , 146-47,
 
 360 S.E.2d 135
 
 , 137-38 (1987). When the issue came before this Court again a few years later, we declined to follow
 
 Gray
 
 , holding that
 
 Gray
 
 "contradicts the express language, rationale and result of
 
 Lanier
 
 ."
 
 In re Civil Penalty
 
 ,
 
 92 N.C. App. 1
 
 , 13,
 
 373 S.E.2d 572
 
 , 579,
 
 rev'd
 
 ,
 
 324 N.C. 373
 
 ,
 
 379 S.E.2d 30
 
 (1989).
 

 The Supreme Court reversed this Court, holding that "the effect of the majority's decision here was to overrule
 
 Gray
 
 . This it may not do. Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court."
 
 In re Civil Penalty
 
 ,
 
 324 N.C. at 384
 
 ,
 
 379 S.E.2d at 37
 
 .
 

 Thus,
 
 In re Civil Penalty
 
 stands for the proposition that, where a panel of this Court has decided a legal issue, future panels are bound to follow that precedent. This is so even if the previous panel's decision involved narrowing or distinguishing an earlier controlling precedent-even one from the Supreme Court-as was the case in
 
 In re Civil Penalty
 
 . Importantly,
 
 In re Civil Penalty
 
 does not authorize panels to overrule existing
 
 *889
 
 precedent on the basis that it is inconsistent with earlier decisions of this Court.
 

 To be sure, our Supreme Court has authorized us to disregard our own precedent in certain rare situations.
 
 See
 

 In re R.T.W
 
 .,
 
 359 N.C. 539
 
 , 542 n.3,
 
 614 S.E.2d 489
 
 , 491 n.3 (2005). These arise when two lines of irreconcilable precedent develop independently-meaning the cases never acknowledge each other or their conflict, as if ships passing in the night. This typically occurs because the panel that decided the second case was unaware of the holding of the first. Ideally, this would never happen, but, given the size and complexity of our case law, it does. In that circumstance, the Supreme Court has authorized us to "follow[ ] ... the older of the two cases" and reject the more recent precedent.
 

 Id.
 

 This case is governed by
 
 In re Civil Penalty
 
 , not
 
 In re R.T.W
 
 . As explained above, the second of the conflicting decisions at issue here (
 
 McClamb
 
 ) acknowledged and distinguished the first (
 
 Lark
 
 and
 
 Stokes
 
 ).
 

 *532
 

 McClamb
 
 ,
 
 234 N.C. App. at
 
 758 n.2,
 
 760 S.E.2d at
 
 341 n.2. This means
 
 In re R.T.W.
 
 does not apply. Instead, under
 
 In re Civil Penalty
 
 , we must follow
 
 McClamb
 
 because it is the most recent, controlling case addressing the question. This, in turn, leads us to conclude that the trial court's instructions to the jury in this case were not erroneous, and certainly did not rise to the level of plain error.
 

 Conclusion
 

 We find no error in the trial court's judgments.
 

 NO ERROR.
 

 Judges BRYANT and INMAN concur.
 

 [1]
 

 The General Assembly recodified these statutes, so their statutory citations vary in these opinions, but the statutory language remains the same.